UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 1:15-CR-158-001 |
| | : |
| SHAUN L. GRAVES, | : |
| Defendant | : |
| | : |

*M E M O R A N D U M*

*I.    Introduction*

Before this Court is Defendant Shaun Graves' objections (Doc. 53) to his Presentence Report ("PSR") (Doc. 49).  Defendant argues that his two convictions for common law robbery in North Carolina were not crimes of violence for which he could be subject to a Base Offense Level of 24 under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  (Doc. 53 at 3).  For the reasons that follow, Defendant's objections to the PSR will be overruled.

*II.    Background*

On July 29, 2015, Defendant was indicted on charges of possession of a firearm with an obliterated serial number, 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count One), and unlawful possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Count Two).  (Doc. 1).  Following our denial of his motion to suppress (Doc. 34), Defendant entered into a plea agreement (Doc. 37), whereby Count One was dismissed and he pled guilty to Count Two subject to an appeal of his suppression motion.

On August 22, 2016, a PSR was filed, which determined that, under U.S.S.G. § 2K2.1(a)(2), Defendant's Base Offense Level was 24 because he committed Count Two subsequent to sustaining at least two prior felony convictions for crimes of

violence. (Doc. 49 at 5-6). Specifically, the PSR referenced Defendant's two previous convictions in 2000 for North Carolina common law robbery. (Id. at 6-8). Following the determination of this Base Offense Level, the PSR applied a four-level enhancement for Defendant's firearm having an obliterated serial number, U.S.S.G. § 2K2.1(b)(4)(B), as well as a three-level reduction for Defendant's acceptance of responsibility, U.S.S.G. § 3E1.1(a). (Id. at 6). The resulting Total Offense Level was 25, and Defendant's criminal history was determined to be a category V. (Id. at 6, 10).

Based on these calculations, the imprisonment range under the Guidelines is 100-125 months; however, because the statutory maximum under 18 U.S.C. § 924(a)(2) is ten years, the resulting range is 100-120 months. (Id. at 14). Defendant now objects to the PSR, arguing that his prior two convictions for North Carolina common law robbery do not qualify as crimes of violence under the Guidelines. (Doc. 53 at 3). Defendant contends that his Base Level Offense should be lowered from 24 to 14, resulting in a Total Offense Level of 15 and a guideline range of 37-46 months. (Doc. 50).

III.        *Discussion*

We begin by noting that the burden of proof is on the government "to prove by a preponderance of the evidence the facts in support of a sentence enhancement[.]" United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998).

Under U.S.S.G. § 2K2.1(a)(2), a Base Level Offense of 24 applies, as it did here, "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense[.]" A "crime of violence" for purposes of U.S.S.G. § 2K2.1 is defined by cross-reference to the Career Offender Guideline, U.S.S.G. § 4B1.2.

Under the current text of U.S.S.G. § 4B1.2(a), which the United States Sentencing Commission ("Commission") recently amended, a "'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that" either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; or (2) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm . . . or explosive material." This amended Guideline went into effect on August 1, 2016, after Defendant committed the instant offense under Count Two but before his sentencing.[1]

Prior to the amendment, the former text of U.S.S.G. § 4B1.2 contained three clauses and defined a "crime of violence" as an offense that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" ("elements" clause also known as the "force" clause); (2) "is burglary of a dwelling, arson, or extortion, [or] involves use of explosives" ("enumerated offenses" clause); or (3) "involves conduct that presents a serious potential risk of physical injury to another" ("residual" clause). U.S.S.G. § 4B1.2 (2015).

A. Background to U.S.S.G. § 4B1.2 Amendment

Before turning to which version (the current or former text) of § 4B1.2 applies to Defendant's sentencing, we first discuss the background to the recent amendment to highlight the changes to the Guideline's text.

---

[1] See U.S. Sentencing Commission, Sentencing Guideline Amend. 798, at ii (Jan. 21, 2016), http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160121_RF.pdf

3

Although the amendment left "unchanged" the elements clause of the Guideline, it altered the language of the enumerated offenses clause.[2] Prior to the amendment, the enumerated offenses clause contained only the offenses of "burglary of a dwelling, arson, or extortion, [or offenses] involv[ing] the use of explosives." U.S.S.G. § 4B1.2(a)(2) (2015). It did not list the ten offenses now contained within the text. Rather, many of the offenses now listed—such as murder, manslaughter, robbery, etc.—were previously listed in the commentary, creating confusion among the circuit courts as to the proper weight to be given to commentary offenses.[3] In adopting the amendment that moved these additional offenses from the commentary to the text, the Commission noted that, "[f]or easier application, all enumerated offenses are now included in the [text of the] guideline."[4] The amendment not only added certain offenses, e.g., robbery, to the clause, but it also eliminated other previously listed offenses, e.g., burglary of a dwelling.[5] The revised list reflects a "focus on the most dangerous repeat offenders."[6]

The 2016 amendment to U.S.S.G. § 4B1.2(a) also eliminated the Guideline's former residual clause. Prior to the amendment, § 4B1.2 contained a residual clause, which included as a "crime of violence" offenses involving "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (2015). However, before the amendment went into effect, the Third Circuit held that "the 'residual clause' in

---

[2] See Sentencing Guideline Amend. 798, supra note 1, at 2.

[3] As discussed below, a circuit split has developed regarding the weight afforded to offenses in the commentary and whether the commentary conflicts with the Guideline's text. See infra, note 10.

[4] See Sentencing Guideline Amend. 798, supra note 1, at 3.

[5] See id. at 3.

[6] Id. at 2.

§ 4B1.2 of the Guidelines is unconstitutionally vague" in light of Johnson v. United States, 135 S. Ct. 2551 (2015). United States v. Calabretta, 831 F.3d 128, 133-34 (3d Cir. 2016)

In Johnson, the Supreme Court found an identical residual clause in the Armed Career Criminal Act ("ACCA") to be unconstitutionally vague. 135 S. Ct. at 2563. Relying on Johnson, the Third Circuit in Calabretta struck down the residual clause of § 4B1.2(a)(2), but noted in its decision that the constitutionality of the clause is currently the subject of a circuit split on which the Supreme Court recently granted a petition for writ of certiorari. Calabretta, 831 F.3d at 134 n.6 (citing United States v. Beckles, 616 F. App'x 415 (11th Cir. 2015), cert. granted, 136 S. Ct. 2510 (2016)). In amending the text to remove the now-unconstitutionally-vague residual clause, the Commission determined "that the residual clause at § 4B1.2 implicates many of the same concerns cited by the Supreme Court in Johnson" and that removing the clause "will alleviate some of the ongoing litigation and uncertainty resulting from the Johnson decision."[7]

B. Application of U.S.S.G. § 4B1.2

As is apparent from the differing language of the current (amended) and former texts of § 4B1.2, an issue arises in this case as to which version of the Guideline applies to Defendant's sentencing. Due to the recent amendment, which occurred after Defendant's offense but before his sentencing, we recognized the potential for a different sentencing range to apply and requested supplemental briefing on the issue of whether or not to apply the amended Guideline. (Doc. 56).

In its briefing, the Government's indicates that we should likely apply the former version of the Guideline, stating that where a guideline in place at the time of a defendant's sentencing is different from the guideline in effect at the time of the offense,

---

[7] See Sentencing Guideline Amend. 798, supra note 1, at 2-3.

courts should apply the more beneficial guideline to defendant to avoid *Ex Post Facto* Clause concerns. (Doc. 57 at 1). Nonetheless, the Government argues that "it makes no practical difference" which version applies to Defendant's sentencing. (Id.)

Although we generally apply the Sentencing Guidelines that are "in effect on the date the defendant is sentenced," 18 U.S.C. § 3553(a)(4)(A)(ii), the Commission instructs courts to "use the Guidelines Manual in effect on the date that the [defendant's] offense of conviction was committed" if they "determine[] that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *[E]x [P]ost [F]acto* [C]lause of the United States Constitution," U.S.S.G. §§ 1B1.11(a), (b)(1). In Peugh v. United States, the Supreme Court held that the *Ex Post Facto* Clause prohibits applying an amended Sentencing Guideline provision in effect when the defendant was sentenced if the amended version provides a higher sentencing range than the version in effect when the crime was committed. 133 S. Ct. 2072, 2078-79 (2013).

Here, we agree with the Government and find that an application of either version of the Guideline (former or current) does not result in a higher Guideline range for Defendant. As discussed more thoroughly below, under either version of the Guideline, we would analyze Defendant's prior convictions for North Carolina common law robbery as an enumerated offense. Although the amended text makes this analysis clearer by listing robbery in the Guideline's text, the inclusion of robbery as an offense in the commentary of the former Guideline results in the same analysis under Third Circuit precedent. Therefore, it makes little difference which version of the Guideline we should apply in this case. Nonetheless, to avoid any *Ex Post Facto* Clause issues, we analyze Defendant's prior convictions under the former text of U.S.S.G. § 4B1.2.

We turn to whether Defendant's two prior convictions for North Carolina common law robbery qualify as crimes of violence under § 4B1.2. "Whether a prior conviction constitutes a crime of violence for purposes of the career offender Guideline is a question of law." United States v. McQuilkin, 97 F.3d 723, 727 (3d Cir. 1996). Under the former text of the Guideline in effect at the time of Defendant's offense, there are three ways in which Defendant's convictions can constitute crimes of violence: the elements clause; the enumerated offenses clause; or the residual clause.

### 1. *The Residual Clause*

We begin by rejecting that the prior convictions fall under the former residual clause of U.S.S.G. § 4B1.2. As previously noted, the Third Circuit recently found the residual clause to be unconstitutionally vague. Calabretta, 831 F.3d at 133-34. We reject the Government's assertion that Calabretta applied only to "the particular facts in that case." (Doc. 54 at 5). The Third Circuit's holding in Calabretta was not limited to an as-applied challenge to the convictions of "Death by Auto" or "Eluding in the Second Degree" at issue in that case, but rather unequivocally stated that "the 'residual clause' in § 4B1.2 of the Guidelines is unconstitutionally vague." Id. at 133-34. Although the court did "not address the continued viability of other, similar residual clauses present in other statutes," it squarely addressed the provision at issue in this case—U.S.S.G. § 4B1.2. Id. at 137 n.9. Therefore, Defendant's prior convictions do not constitute crimes of violence under the residual clause because the clause is unconstitutional under Calabretta.

### 2. *The Elements Clause*

Next, we address whether Defendant's prior convictions for North Carolina common law robbery constitute crimes of violence under the elements clause of § 4B1.2.

7

We begin by noting that the elements clause in the ACCA employs the same language as the elements clause in U.S.S.G. § 4B1.2(a). The Third Circuit has instructed that "[p]recedent . . . requires the application of case law interpreting 'violent felony' in [the] ACCA to 'crime of violence' in U.S.S.G. § 4B1.2[ ] because of the substantial similarity of the two sections." United States v. Brown, 765 F.3d 185, 189 n.2 (3d Cir. 2014) (quoting United States v. Marrero, 743 F.3d 389, 394 n.2 (3d Cir. 2014)).

Both clauses include as a "crime of violence" (or "violent felony" as used in the ACCA) offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); U.S.S.G. § 4B1.2(a)(1). "Physical force," as used in the clause, means "violent force—that is, force capable of causing physical pain or injury to another person" and which "connotes a substantial degree of force." Johnson v. United States, 559 U.S. 133, 140 (2010).

In determining whether a conviction qualifies as a "crime of violence" under the elements clause of § 4B1.2(a)(1), we "are required to follow the 'categorical approach,' wherein the crime of conviction is evaluated as to whether it categorically constitutes a crime of violence." United States v. Jones, 740 F.3d 127, 133 (3d Cir. 2014). "That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the [elements clause], without inquiring into the specific conduct of this particular offender." Id. at 133 (quoting James v. United States, 550 U.S. 192, 202 (2007)).

"In the ordinary case of identifying whether a prior conviction fits the § 4B1.2(a)(1) definition, a court simply asks 'whether the state crime has the use or threat of physical force [against the person of another] as an element of the offense.'" Brown, 765 F.3d at 189 (quoting United States v. Remoi, 404 F.3d 789, 794 (3d Cir.2005)). "If the

state statute 'sweeps more broadly' than the . . . definition, a conviction under it is not a [crime of violence] even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." Id. at 189 (quoting Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)).

Here, given that Defendant's prior convictions were for North Carolina common law robbery, we begin our analysis under the categorical approach by looking to case law in the Fourth Circuit. We find persuasive the holdings in United States v. Gardner, 823 F.3d 793, 803 (4th Cir. 2016), and United States v. Hinton, No. 4:15-CR-26-FL, 2016 WL 632447, at *1-2 (E.D.N.C. Feb. 17, 2016), that North Carolina common law robbery neither constitutes a "crime of violence" under § 4B1.2 nor a "violent felony" under the ACCA.

In Gardner, the Fourth Circuit considered whether North Carolina common law robbery qualified as a "violent felony" under the ACCA's elements clause.[8] 823 F.3d at 801. The court decided the issue only under the elements clause, noting that because the residual clause was struck down as unconstitutional in Johnson, "North Carolina common law robbery can qualify as a 'violent felony' [under the ACCA] only if it matches the definition of a violent felony under the [elements] clause." Id. at 802.

The court began by defining the offense of North Carolina common law robbery as the "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." Id. at 802 (quoting North Carolina v. Smith, 292 S.E.2d 264, 270 (N.C. 1982)). Applying the categorical approach, the court considered whether the offense "necessarily requires the use, attempted use, or

---

[8] As we noted previously, we treat case law interpreting the ACCA's "violent felony" language as instructive in interpreting "crime of violence" under U.S.S.G. § 4B1.2. Brown, 765 F.3d at 189 n.2.

9

threated use of 'physical force,' within the meaning of the ACCA," and focused on "'the minimum conduct necessary for a violation' under state law." Id. at 803 (quoting Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015)).

The court looked to the element of North Carolina common law robbery that required the offense be committed "by the alternative means of violence or fear." Id. After analyzing case law from the North Carolina Supreme Court, the Fourth Circuit determined that "even de minimis contact can constitute the 'violence' necessary for a common law robbery conviction under North Carolina law." Id. The court also looked to decisions by North Carolina's appellate courts, and concluded that "[b]ased on these decisions . . . the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of 'force capable of causing physical pain or injury to another person,' as required by the [elements] clause of the ACCA." Id. (quoting Johnson, 559 U.S. at 140).

The court in Gardner held that North Carolina common law robbery does not qualify categorically as a violent felony under the ACCA. Id. Similarly, in accord with the Gardner decision, the district court in Hinton also held that North Carolina common law robbery does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a)(1) because "there is no requirement that [common law] robbery be accomplished by 'violent force' as that term has been defined as a matter of federal law." 2016 WL 632447, at *1-2.

Both the Fourth Circuit in Gardner, and the district court in Hinton, held that North Carolina common law robbery did not fall under the elements clause of either the ACCA or U.S.S.G. § 4B1.2. We agree with these decisions. Therefore, we conclude that,

under the categorical approach,[9] North Carolina common law robbery does not constitute a "crime of violence" under the elements clause of U.S.S.G. § 4B1.2(a)(1).

### 3. The Enumerated Offenses Clause

Finally, we turn to whether Defendant's prior convictions for North Carolina common law robbery constitute crimes of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2. We find that they do.

As a preliminary matter, because we apply the former text of § 4B1.2 in effect at the time of Defendant's offense, we note that robbery is not a listed offense in the text of the Guideline. See U.S.S.G. § 4B1.2(a)(2) (2015). Rather, at the time of Defendant's offense, robbery was listed in Application Note 1 of the commentary to the Guideline, which stated that a "crime of violence" included "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2 cmt. 1 (2015) (emphasis added).

The Government contends that the fact that robbery was listed in the commentary to § 4B1.2, instead of the text, "makes no practical difference" in this case because "it is clear the . . . Commission intended the crime of robbery to serve as an 'example' generic offense that independently qualifies as a predicate conviction for the

---

[9] We note that neither party here has suggested that the "modified categorical approach" applies. See United States v. Abbott, 748 F.3d 154, 157 (3d Cir. 2014). This approach may be used when a statute underlying a prior conviction is "divisible," that is, "'lists multiple, alternative elements,' rather than a 'single, indivisible set of elements.'" Id. (citation omitted) (quoting Descamps,133 S. Ct. at 2282, 2285). In Gardner, the Fourth Circuit rejected the application of the modified categorical approach to North Carolina common law robbery because, although the offense could be committed "by means of violence or fear," a "crime is not divisible simply because it may be accomplished through alternative means." 823 F.3d at 803. The Supreme Court recently upheld this distinction between the "elements" and "means" of committing an offense. Mathis v. United States, 136 S. Ct. 2243, 2253 (2016).

career offender enhancement." (Doc. 57 at 1-2). Defendant counters that the listing of the offense in the commentary is significant, and argues that offenses in the commentary do not have "freestanding definitional power." (Doc. 53 at 4).

In <u>Stinson v. United States</u>, the Supreme Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. 36, 38 (1993).

Here, Defendant suggests that because the commentary does "not interpret or explain any existing text" of § 4B1.2(a)(1) or (2), there exists a "conflict between the [text of the Guideline] and the commentary" because robbery does not constitute a crime of violence under any textual provision of the Guideline. (Doc. 53 at 4). In furtherance of this argument, Defendant asserts that commentary offenses (such as robbery) only "interpreted the residual clause, which . . . is no longer valid," and that "commentary offenses do not survive <u>Johnson</u>, unless they independently satisfy the [elements] clause." (<u>Id.</u> at 4-5). We disagree with this interpretation.

Although the commentary including the additional offenses does not interpret any text of the elements clause, the enumerated offenses clause, or the residual clause of § 4B1.2(a)(1) or (2), the commentary unambiguously states that it *is* interpreting the phrase "crime of violence" under § 4B1.2(a). The narrow view suggested by Defendant that this commentary needs to fall within the text of a particular subdivision of § 4B1.2(a)(1) or (2) for an offense to qualify as a "crime of violence" contravenes Third Circuit precedent interpreting <u>Stinson</u>.

12

In <u>United States v. Marrero</u>, the Third Circuit faced a similar question of whether a prior conviction for third-degree murder qualified as a crime of violence under the Guideline's commentary, which listed "murder" as an example offense. 743 F.3d at 397. The panel rejected an argument, similar to those made by Defendant in this case, that third-degree murder was not a crime of violence because it failed to satisfy the Guideline's residual clause. <u>Id.</u> at 398. The panel stated that "whether [the defendant's] third-degree murder conviction qualifies as a crime of violence depends on the enumeration of 'murder' in Application Note 1 to § 4B1.2." <u>Id.</u>

In surveying its prior decisions, the Third Circuit reasoned that "nothing has called into question our prior conclusion that offenses listed in what is now Application Note 1 to § 4B1.2 should be considered 'enumerated' offenses for purposes of the crime-of-violence analysis." <u>Id.</u> The court explained that "basic interpretative principles and a plain reading of Application Note 1 compel" an analysis under the enumerated offenses clause because, under <u>Stinson</u>, the commentary did "not conflict with federal law and [was] not an erroneous reading of U.S.S.G. § 4B1.2." <u>Id.</u> The court stated that the commentary "merely supplements the numbered provisions of § 4B1.2 and unambiguously states that 'crime of violence' includes ten specific crimes." <u>Id.</u> The court looked to decisions of the other circuits, which also "concluded or suggested that the ten offenses listed in Application Note 1 are 'enumerated' for purposes of the crime-of-violence analysis." <u>Id.</u> (citing cases).

It is worth noting that there is a circuit split on the issue of the weight afforded to § 4B1.2's commentary offenses, i.e., whether the commentary has freestanding definitional power and whether the listed offenses in the commentary conflict

with the text of the Guideline.[10] Regardless of this split, we follow the Third Circuit's approach in Marrero, which "reaffirm[ed] that offenses listed in Application Note 1 are 'enumerated' for purposes of the crime-of-violence analysis." Id. at 399. Accordingly, we reject Defendant's arguments that the commentary is untethered to the text of § 4B1.2 or that there is a conflict between the text of the Guideline and the commentary.

Rather, consistent with Marrero, we find that, even where an offense does not fall under either the residual clause or elements clause of § 4B1.2, it can still constitute a "crime of violence" under the enumerated offenses clause, even though the enumerated offense is listed in the commentary and not the text of the Guideline. See Marrero, 743 F.3d at 399 ("We apply [an] enumerated-offense approach to cases, like this one, in which the crime of conviction is listed in either § 4B1.2(a)(2) or Application Note 1 to § 4B1.2."). Although Marrero was decided before the Supreme Court's Johnson decision and the Third Circuit's decision in Calabretta, the Third Circuit gave no indication in Calabretta that this part of its Marrero holding was abrogated. See Calabretta, 831 F.3d at 135.

As such, under Marrero, even though North Carolina common law robbery does not fall under the elements clause or the now-unconstitutional residual clause of §

---

[10] Compare United States v. Soto-Rivera, 811 F.3d 53, 60 (1st Cir. 2016) ("Thus, in the absence of the residual clause, there is nothing within § 4B1.2(a)'s text to serve as an anchor for Application Note 1's inclusion of possession of a machinegun within the definition of crime of violence."); and United States v. Shell, 789 F.3d 335, 340-41 (4th Cir. 2015) ("[T]he government skips past the text of § 4B1.2 to focus on its commentary," but "it is the text, of course, that takes precedence."); and United States v. Rollins, No. 13-1731, 2016 WL 4587028, at *5 (7th Cir. Aug. 29, 2016) ("[A]pplication note 1 is enforceable only as an interpretation of the residual clause in § 4B1.2(a)(2); it has no independent legal force. The residual clause is invalid, and the application note's list of qualifying crimes cannot alone supply the basis for a career-offender designation."); and United States v. Armijo, 651 F.3d 1226, 1234-37 (10th Cir. 2011) (rejecting argument that manslaughter qualified as crime of violence because it is listed in commentary; "[t]o read application note 1 as encompassing non-intentional crimes would render it utterly inconsistent with the language of § 4B1.2(a)."); with United States v. Walker, 595 F.3d 441, 443–44 (2d Cir. 2010) ("[The] application note specifically includes 'robbery' as a 'crime of violence' under § 4B1.2(a)."); and Marrero, 743 F.3d at 397-401; and United States v. Lockley, 632 F.3d 1238, 1242 (11th Cir. 2011) (finding robbery an enumerated offense under § 4B1.2 despite not listed in guideline's text).

14

4B1.2, the offense can still qualify as a "crime of violence" through its inclusion (via the commentary) in the enumerated offenses clause. 743 F.3d at 399. Because robbery is listed in the commentary, we analyze this case under the enumerated offenses clause.

Of course, as Marrero held, the fact that robbery is an enumerated offense does not automatically make North Carolina common law robbery a crime of violence under § 4B1.2. See id. ("The District Court . . . erred when it held that the enumeration of 'murder' was alone sufficient to render third-degree murder under Pennsylvania law as a crime of violence."). Rather, because enumerated offenses such as robbery are not defined in the Guidelines or its commentary, we must define the elements of robbery according to its "generic, contemporary meaning." Taylor v. United States, 495 U.S. 575, 598 (1990). Then, "we compare the elements of the crime of conviction to the generic form of the offense as defined by the States, learned treatises, and the Model Penal Code." Marrero, 743 F.3d at 399 (quoting United States v. Lockley, 632 F.3d 1238, 1242 (11th Cir. 2011)).

"In other words, '[f]irst, a court must distill a 'generic' definition of the predicate offense based on how the offense is defined 'in the criminal codes of most states.'" Id. (alteration in original) (quoting United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011)). "Second, after finding the generic form of the predicate offense, a court must determine whether the defendant's prior conviction constituted a conviction of the generic offense . . . by comparing the elements of the crime of conviction with the generic offense." Id. (quoting Peterson, 629 F.3d at 436). Under this approach, how a defendant actually perpetrated the predicate offense—or the underlying facts of commission—make

15

no difference; we "may ask only whether the elements of the state crime and generic offense make the requisite match." Mathis v. United States, 136 S. Ct. 2243, 2256 (2016).

Here, for Defendant's prior convictions of North Carolina common law robbery to constitute crimes of violence under § 4B1.2(a)(2)'s enumerated offenses clause, the offense must "substantially correspond" to the generic definition of robbery. See Marrero, 743 F.3d at 400 ("So long as the statutory definition of the prior conviction 'substantially corresponds' to the generic definition of the offense, the defendant's prior offense qualifies as a crime of violence." (citing Taylor, 495 U.S. at 602)). However, if North Carolina common law robbery "'sweeps more broadly than the generic crime, a conviction under that law cannot' constitute a conviction of the generic offense." Id. (quoting Descamps, 133 S. Ct. at 2283).

In defining generic robbery, our goal is to capture the "offense as envisioned by the Guidelines' drafters." Marrero, 743 F.3d 389 (quoting Lockley, 632 F.3d at 1242). The Third Circuit follows a "multi-source approach" in determining the generic meaning of the offense, requiring us to look to various state codes, the Model Penal Code, federal law, and criminal law treatises. United States v. Rodriguez, 711 F.3d 541, 551 n.14 (5th Cir. 2013) (citing Marrero, 677 F.3d at 165-66).[11]

The Model Penal Code "is an ideal starting point." Marrerro, 743 F.3d at 400. The Model Penal Code defines robbery as:

> (1) Robbery Defined. A person is guilty of robbery if, in the course of committing a theft, he:
>
>   a. inflicts serious bodily injury upon another; or

---

[11] As the Fifth Circuit explained, there is circuit split on the different methods of determining the genic meaning of an enumerated offense. Rodriguez, 711 F.3d at 551. Some states apply a plain-language approach or a mixed-method approach, while the Third Circuit applies the multi-source approach. Id. at 551 (citing cases).

> b. threatens another with or purposely puts him in fear of immediate serious bodily injury; or
>
> c. commits or threatens immediately to commit any felony of the first or second degree.
>
> An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

Although "a small minority of states and the Model Penal Code" require some form of bodily injury or physical harm, most states generally define robbery slightly differently. Lockley, 632 F.3d at 1243. The majority of states describe robbery as a "common-law felony" that requires a "1) trespassory 2) taking and 3) carrying away of the 4) personal property 5) of another 6) with intent to steal it, where 7) the property is taken from the person or presence of the other and 8) the taking is accomplished by means of force or putting in fear." Hinton, 2016 WL 632447, at *3 (citing Wayne R. LaFave, Substantive Criminal Law § 20.3 (2d ed.)); see also Lockley, 632 F.3d at 1243 ("[W]e believe the generic, contemporary form of robbery is better reflected in the majority definition" and requires "the taking of property from another person or from the immediate presence of another person by force *or* intimidation.").

Here, Defendant argues that we should interpret generic robbery under the minority approach and in accordance with the Model Penal Code's "serious bodily injury" element, and therefore require more than the use of de minimis force as an element of the generic offense. (Doc. 53 at 6). Under that interpretation, Defendant argues that because North Carolina common law robbery encompasses a theft where an offender only uses de minimis force, see Gardner, 823 F.3d at 803-04, North Carolina common law robbery is "broader than generic robbery [and] does not qualify as a crime of violence even with

17

robbery . . . as an enumerated offense." (Doc. 53 at 6-7). As the courts in Hinton and Lockley did, we decline to utilize the Model Penal Code to define generic robbery in favor of the approach adopted by the majority of states. Therefore, North Carolina common law robbery substantially corresponds to the definition of generic robbery employed my most states. Thus, we find that "[u]nder the prevailing, generic definition, North Carolina's crime of common law robbery categorically qualifies as the enumerated offense of 'robbery'" and constitutes a "crime of violence" under the enumerated offenses clause of U.S.S.G. § 4B1.2. Hinton, 2016 WL 632447, at *3.

IV.     *Conclusion*

Because Defendant's two prior convictions constitute crimes of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2, his objections to the PSR are overruled. His Base Offense Level therefore remains at 24 under U.S.S.G. § 2K2.1(a)(2), and his resulting Guideline range for Count Two is 100-120 months. We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: October 12, 2016